Attorney for the insurance company, defendant of the insurance company, defendants of Appalachians. Argument on behalf of the plaintiff, felon, attorney Ms. Eileen Cave. Argument on behalf of the defendants, Appalachians, attorneys Ron and Ron. Ms. McCabe. Good morning, your honors. Good morning. Counsel, may it please the court. My name is Eileen McCabe and I represent the plaintiff appellant, Addie O'Neal-Vidales. In this case, we're seeking a reversal of the entry of summary judgment in favor of the defendant affirmative insurance company and a reversal of the denial of summary judgment in favor of my client, Addie O'Neal. Basically, what we have before you today is an automobile accident that occurred on September 18, 2009, wherein Ms. O'Neal-Vidales' vehicle was struck by a vehicle driven by a Richard Clark. Richard Clark, at the time of the automobile accident, had a policy of insurance with affirmative insurance company. The listed vehicle on that policy was a 1992 Ford. When we were finally able to find Mr. Clark and take his testimony in this matter, Mr. Clark advised us and testified that he had bought this 1997 Chevy Blazer a day or two prior to this automobile accident. Your first argument to the trial court was that this was not an owned vehicle by Mr. Clark. Why did you argue that way? I argued that way, either a non-owned vehicle or a newly acquired vehicle, because when Mr. Clark testified that he had purchased the vehicle from a private owner, had gone to try to title it and get plates, was advised that he didn't have a bill of sale, that the title was listed to somebody else, my thought process was maybe he didn't really own it yet. And if he was a non-owned vehicle, then I don't think that there would be any question that it would be covered under the vehicle, because as an insurance policy holder, we have the right to drive another vehicle. So with the thought process of maybe the actual purchase wasn't complete, or in the alternative, it was a newly acquired vehicle. I think based on what I've been able to find since, even though it was not yet titled or registered, he very well could have been the owner. So I think that we are looking at a newly acquired vehicle under the policy. Well, the trial court actually found it to be an owned vehicle. He did. Also, in the trial court, a 2004 case, which certainly was before your case, American Freedom Insurance, you didn't mention that. Why did you? I did not. I had not found it, Your Honor. Whatever way I had been searching for support for my motion for summary judgment and in opposition to Mr. Nax, I neither found American Freedom nor Hall. Neither of us did. I truly wish that I had. I made the very same arguments to the trial court that I have here and that are set forth in American Freedom, but not the actual case. So the trial court basically looked at the policy language only, as did the appellate court at Hall? Yes. And the policy language at Hall was coverage only if given notice, and the policy language here is coverage only upon and at the time of receipt of written notice. What difference is there? I don't know that there's any difference in true essence with regard to the policy language in Hall or American Freedom or our case. I don't think that that is the crux of where our issue is. I would respectfully submit that I think there are some significant differences between Hall and this case. First of all, obviously, factually, we know that it's very different with Hall having a car that was being towed by another car that was incurred by another third company. But additionally, in Hall, the court didn't have the benefit of any appellee's brief or argument, and only really got one side of the argument in addition to the policy, so that there were a lot of the issues and things that weren't brought to the court's attention in that case. And I think that makes us able to limit Hall to the facts applicable in that case and not broaden it out to all cases, where I think this case here is not only factually similar to the facts of American Freedom, but I think the policy language is also the same, and I think the rationale of American Freedom goes in line with the majority of jurisdictions that do believe, and for the protection of the citizens, that we have 30-day automatic coverage, regardless of the notice. In light of that 30 days, is there any real difference between an owned vehicle and a newly acquired vehicle? And it shows up in two places in this policy, one under just the general provisions, and the newly acquired definition is under what looks like an addendum called conditions. The conditions? You mean as far as like a replacement vehicle versus a newly acquired vehicle? Well, I mean, if it's newly acquired or if it's owned, what's the significant difference? Well, I think because this one could be considered newly acquired and owned. Right, but in order to come under the automatic 30-day coverage, it would have to be newly acquired. If it's a vehicle that you've owned for in excess of 30 days and you have not scheduled it on a policy, I don't believe that coverage would apply, so I think that's where the difference would come. That grace period would have expired. Correct. And the grace period here clearly did not expire. Correct, correct, having just purchased it at most a day or two beforehand. And I think that that's why, regardless of the policy language asking for a written notice, it makes sense to have the automatic coverage, the grace period of 30 days. Obviously, we do know that the financial responsibility laws want motorists on the roadway to have insurance for the protection of all. If we don't have that 30-day grace period, I think there would be a lot of, there could be significant gaps in insurance when accidents do happen. Did you ever make a public policy argument to the trial court? I did, Your Honor. And what was the trial court's comment to that argument? I don't recall the trial court making a response to the public policy argument, rather just more so that Mr. Clark was the owner and that the policy did have a written notice requirement. What obligation did the trial court have to follow Hall, assuming somebody cited Hall to them, since it was decided by the 2nd District? It would be my belief that I think the trial court would have had to give precedence to Hall if it found it applicable to the facts of this case. But that was not specifically argued. The issue was argued, but not how this case might not be the same as the issues addressed here. Is that your position? It is, Your Honor, because I believe my arguments to the court follow exactly my arguments here today, but without the case law support on either side. Are you conceding that Mr. Clark did not give adequate notice for the policy? I have difficulty with that, Your Honor, because, one, I don't believe that under the law that notice should be necessary. Second of all, I think that he did attempt to give notice by calling Insure 1. Additionally, we have his testimony that he did talk to affirmative following the accident. We know that our client also made a claim for benefits immediately following the accident. So I think that there was some type of notice. Do you think that's a factual issue for the trial court? Well, I guess whether or not notice had been given would, in fact, be a factual issue. Yes, Your Honor, I do. Generally, when parties file cross motions for summary judgment, they are telling the appellate court, or telling the trial court, I should say, that there are no issues of fact. And I would agree. I would agree with that. And I think we do agree that there was not written notice saying, please place this on my policy. I would acknowledge that. I do not acknowledge that it was necessary. And I can't acknowledge that there wasn't some type of notice or attempt at notice. Is there any dispute that there was an agency relationship between affirmative and Insure 1? I do not believe so, Your Honor. So the call to Insure 1 is a call to affirmative? I have argued that it is. So that would leave no question of fact as to whether or not that call was made. The only issue is whether or not that notice was sufficient. Correct. Correct. It's a legal question, not a factual question. That would make it, yes, a non-factual question. But was there an actual legal agency argument ever made at the trial court level? No, because not in that format. Rather, just that obviously Insure 1 was notified. And the majority of my argument, I will acknowledge, was that it should be entitled to coverage as a newly acquired vehicle with a 30-day grace period. Many of the cases that espouse what we read about is the, quote, majority view, find that the policy language is ambiguous. Do you think this policy language is ambiguous or not? I have difficulty with we'll give you 30 days of coverage, but it's not effective until and upon receipt of the written notice, but then it goes back. So I would say that I don't think that that's very clear, and I do not think to an average insurer it would be very clear. As we saw in this case as well as in American Freedom, where you have a newly acquired vehicle, it gets totaled, and it goes to the junkyard. The average individual, what am I calling to insure? What is there to insure? So I don't think, and I certainly don't believe, that anyone understands written notice and not effective until. So then what is 30 days about? So in answer to Your Honor's question, I do think that it is somewhat ambiguous. Primarily, I would just respectfully request that the court reverse the entry of summary judgment in favor of an affirmative and would ask the court to limit this court's findings in hall to the facts of that case and following American Freedom, Schaeffer, and even the Supreme Court decision in the United Farm Bureau, although it's dicta, does refer to that 30-day continuous coverage as a benefit to policyholders and apply that in this case so that there would be coverage. Obviously, I think that a 30-day finite period for individuals who are already policyholders of an insurance company does not put an unfair burden on the insurance company and in turn would protect individuals on our roadways. Well, wouldn't it also sort of, not guarantee, but be a pretty strong indication that you're going to keep the car with them so it does give a benefit to the insurance company as well by giving you this period of grace or whatever we're calling it. Right, that you're not going to be looking around for quotes in other companies when you know that when you purchase this car, okay, then I can just make the phone call. You're going to get a bill retroactive to the date of acquisition. Yes, Your Honor. Right. Right. So it doesn't hurt- Both sides benefit. Correct. Unless there's an accident. Yes. Yes. Always. If we were to adopt the majority view, what do we do with this case? Are you asking that we enter an order granting summary judgment to your client or send it back to direct the trial court to do so, or are there other issues in the trial court that have to be resolved? Where do you see this going should you prevail? First, I would obviously ask for a reversal of the entry of summary judgment in favor of affirmative. Obviously, I would seek entry of summary judgment in favor of Ms. O'Neill Vidalis, either through this court or with instruction to the circuit court to do so because the facts had not changed, and then obviously to remand it to the circuit court for any additional issues that may remain between us, following a declaration of coverage. Thank you. Thank you very much. Mr. Knack or Knock? Knack. Knack. Justices. Counsel. I'd like to start off by addressing a question that Justice Burkett raised, which was the call to insurer one equaling the call to affirmative, and that is absolutely not the case, sir. Insurer one is an agent of the insurance purchaser, and the way I always equate it is it's no different than, like, a Best Buy that sells various different brands. One of those brands at this point, Best Buy, is an affirmative insurance policy. That doesn't make that store, this insurer one store, an agent of affirmative by any means, so they're not equal, they're not equated. But this is still, though, this hasn't been decided by the trial court. That's true, but it was also not raised by counsel suggesting that insurer one should be treated as affirmative. That should be one and the same. And to me, I took that to mean perhaps wrongfully so. What is the relationship, again, between affirmative and insurer one, then? Insurer one was simply a retail store that sold various policies from different providers, state firm, all-state, progressive, and affirmative. And affirmative. And affirmative. But that doesn't necessarily make them the agent of affirmative. They just sold their policies. But Mr. Clark said he called the number on the back of his insurance card. What number was that? I do not know. Well, you're saying he didn't call you. He did not call affirmative, and on the back of his insurance card would have been the number for affirmative insurance. So I do not know what he was referring to when he said that. So he clearly called insurer one, and he called the number on the back of his insurance card as well, but he doesn't recall what that number was. I wouldn't agree. Insurer one sells affirmative policies. Yes, sir. So, but they're not affirmative as agent. Correct. Insurer one, there is no agency relationship between them. They're authorized to sell affirmative policies. Sure, but that doesn't make them the agent of every carrier they sell for. They just, again, they're the store that sells these products. If you have an issue with the product, you go to the product holder. There's the intermediary between the two. And, again, Mr. Clark testified that he called insurer one. There's no other evidence in the record of that other than Mr. Clark's testimony, which was elicited. And, again, that wasn't an issue before the trial court, so we didn't delve further into that issue at all. At some point, did a representative from affirmative say to the courts that they, that affirmative had called Mr. Clark in some manner in that 30-day period? A representative, ma'am, that would have been me, actually, in my oral argument. I didn't want to say that. I will say it. And I was mistaken. I thought that affirmative had contacted him to confirm ownership of the vehicle. That was a mistake. I was wrong in the trial court. In fact, after, and that was the first set of summary judgments that were filed by both parties, the court denied those motions, those cross motions, asked us to go find Mr. Clark. We did in the federal penitentiary in Lisbon, Ohio. We took his deposition there, at which time, and I cite to that in my statement of facts, his testimony was at no point before, no point after, did he ever speak with affirmative insurance. And his statement was, afterwards, they tried calling him, but he was having legal trouble, so he didn't really care. Well, he didn't talk to anybody, but he said they tried calling him. How did he know that? I don't know. And how would affirmative know to try to call him? Because affirmative was contacted at some point about a claim. But Mr. Clark probably didn't do it. That's correct. It was probably, I would assume, claimant's counsel. In terms of the policy provision itself, the Hall Court and what has, I guess, been described as a minority opinion, which includes cases from Iowa, Michigan, Indiana, for example, all look to the exact language of the policy and ask, is it clear, unambiguous, and an express provision? The other cases, including the Smith case out of the 1st District, simply either ignore that provision and say we're not going to enforce it, or, as the Court pointed out, suggest that there's some sort of ambiguity within that language. There simply is not. It's a 30-day period that an affirmative insurance company says, look, you have 30 days to tell us if you want coverage for a vehicle. And that's the bargain. You tell us you want coverage, we have to give you the coverage if you tell us that. Related back to? Related back to day one. Related back to. So, I mean, you can see that if this Mr. Clark had called on day 29, you would have had to cover the accident on day one or two. Absolutely. All the way through day 30, because they have 30 days to do it. And that's what you'd bargain for. So, I mean, that's where this isn't an illusory is. Birch, in some of these cases, talked about this being a deceptive clause in the contract. That is correct. And the trial court actually asked me that very question, which is if he had called afterwards, and there are some courts that suggested or arguments made by attorneys in some cases that the accident would stop the chain and they wouldn't be able to give notice afterwards. That's not the case, because that's not what the policy language says. The policy language says unless you have an accident at which time you can't be covered. What the policy language says is you have 30 days to tell us you want coverage for this vehicle. And Mr. Clark just simply never did that. What does the insurance company get out of this? I mean, if the insurance company on day 29 gets a call and says, hey, I was in a horrible accident on day one, and you're stuck with this thing now, you're stuck with coverage. Absolutely. What do you get out of this notice thing? And as a follow-up, maybe you can also answer this question. We've got cases going back to the 40s. Birch is from 1954. These clauses have been at issue in cases forever. Why don't you change the language? I mean, it's always the same in every case. I mean, a little different, but basically the same provisions. You have 30 days. You've got to give us notice, whether it's call or write or whatever. I mean, so maybe you could answer both. Sure. Well, and I guess the answer is, on first point, of why we don't change the language, because some courts have found the language to be appropriate. And so if we change the language to satisfy the first district, for example, we would probably upset the districts that don't follow it. However, I'm not even sure you can change the language to satisfy those districts, because they're not suggesting necessarily that there's an ambiguity. That's not what the first district even said. What they said is there's 30 days that they get. It's automatic, and that's the end of the story. So no matter what the language says, they're going to give the 30 days. And I apologize. What do you do about it? What is the affirmative get on it? And I think it's twofold, the reason why it's in there. I think Justice Birchett said it correctly when he said, number one, it's premium. The insurance company, upon notice of this, is going to send a charge. And it's important to point out this is a nonstandard policy, and with nonstandard policies and those insurers, it's a much more fluent clientele. They come in and out of the business much more quickly. And so it's not always that they're going to come back for that next 30 days or that next 60 days. So if a firm is in a position now of insuring vehicles, they didn't even know it was insuring. Well, it's especially true in cases where you're buying, for the sake of a better word, beaters. Correct. If you're buying beaters and you're living week to week, month to month on a vehicle that's, you know, dilapidated, falling apart, you want to be sure that you're going to be covered, which appears to be the case here. He's buying older vehicles that are limping along. And both affirmative and the insurer both have a benefit. And you're going to attract customers that way. So it's a business as well as a legal decision. That's absolutely correct. And it gives affirmative a snapshot as to what its exposure is at any given time. It needs to know how many vehicles it's out there insuring at any given time. This information will give that. And the third point I want to raise is the 30-day period also becomes an issue. In this case, the only evidence we have regarding the date of purchase was Mr. Clark's testimony. Several years after the accident happened, I have no way to go back and verify that was the case. Had he given us written notice, we would have known this is when he bought the vehicle. So there was really very little other ways for us to find out. Possibly if he had registered the vehicle with the state, but that doesn't always happen. And so now how do we know this accident didn't happen 32 days ago from the accident that he purchased the vehicle? Again, we only have his testimony to rely on, and that's the position he put us in by not giving us the notice that the policy clearly requires. In terms of the public policy, I'm sorry. Is that a legal issue or a factual issue? The timing? Yes. It would be a factual issue, but we did not dispute it because we didn't feel like we had any evidence to dispute it. All right. So we aren't disputing when the accident occurred compared to the purchase date. You're simply saying it could have been a problem. It could be a problem. And the point being is that that would, again, be prevented had written notice been provided, because it would have been clear that this was the date he purchased it or around this window. In terms of the public policy argument of enforcing or not enforcing this 30-day provision, I thought the courts in, for example, Colonial Pens stated very well when it said, although coverage of an additional car retroactive to the date of acquisition is a laudable goal, this objection cannot be carried to the extent that the policy itself is disregarded. And the Colonial Pen Court went on to say that this is an entirely reasonable bargain. You give them notice, they have to give you coverage for 30 days. But yet American Freedom decided after, I think, Colonial Pen. Schaeffer decided after Colonial Pen. I mean, if we take your argument literally disregarded the policy. And that's exactly what the First District has done and a whole lineage of cases has done is they've either ignored the policy language or they have said we find it to be somehow ambiguous and therefore we're going to strike that language. And they don't actually answer the question of why it's ambiguous or they don't answer the question of why it shouldn't be enforced. They never actually deal with that issue. And it's a clear express provision. Do these cases sometimes or somehow go back to Birch and this maybe underlying premise that the insurance company wants notice so they can say no? No. I don't agree with that because I don't believe the insurance company can say no to the coverage. But that's what Birch said. Birch and some of the other cases talked about this benefit environment and talking about the provision would be meaningless. I think that's basically what Birch was talking about was the provision would be meaningless toward the insurer if they had to give the notice and then the insurance company could say no. Correct. But the insurance company can say no, but the insurance company has other interests in obtaining that notice. And, again, it's proximity of when the vehicle was purchased. It's about learning about claims possibly sooner. It's learning about what their exposure is. And it's about collecting premium, to be frank. All right. There are two sections in this particular policy. One might be under the definitions or the provisions coverage, which defines owner, an owned vehicle, rather. And then we have something in the conditions talking about a newly acquired vehicle. Yes. What's newly acquired was mentioned in the first provision as well. So what's the purpose of the condition? It's duplicative. Does it make it more? Does it make it ambiguous now because we have these two provisions in here? I don't believe so. I believe both of them state the same exact thing. And it's saying two places in policy. So perhaps if the policyholder missed it in one, they'll see it in the other if they just wanted to see what conditions apply to their policy. But it's unequivocal that a newly acquired vehicle clause is in this policy, which states that within 30 days we'll cover you, but you've got to tell us. You've got to ask us for the coverage, and then we'll give it to you. So is there any difference in this case, not in all cases because all we're talking about is this case, between an owned vehicle and a newly acquired vehicle? An owned vehicle would include vehicles that would be owned beyond 30 days. Okay. But the trial court here has found that this was an owned vehicle by Mr. Clark, correct? As opposed to a not owned vehicle. I don't think it was distinguishing a newly acquired vehicle when that language was used. Did the trial court ever use newly acquired? I don't think the trial court did. I think the trial court simply was answering the question, does this 30-day provision, written notice provision, apply or does it not? Will I require it to stand? And the court said, yes, it's an express, clear provision, and we're going to enforce it, and Mr. Clark admits he never gave that written notice. Did you cite American Freedom or Sheffer or Hall in your argument? I did not. Okay. So the trial court really, if he followed Hall, he got lucky and he found it himself, or he just knew about it, but there was no real law discussed, even though what you both conceded was that there were no factual issues and this was simply a matter of law. My understanding, and, again, I can't put myself in the shoes of the trial court or what the judge was thinking, but the arguments that were raised in the case law that was cited had to do with contract interpretation, and I think that's exactly what Hall stands for, is enforce the contract as written unless there's an ambiguity or unless it's against public policy and should be stricken. And that's what the court found, that it wasn't. It was clear, it was unequivocal, and that it should be enforced, and he didn't do it. You would agree that counsel did make the argument, she just did not have the case law in the trial court, correct? Absolutely. And, again, I think, though, there is a difference in that. It's really not a waiver, it's at best forfeiture. Okay. It might be a more accurate description of what the issue is. Counsel, you know, obviously, waiving or forfeiting reliance on a case is different than forfeiting an argument. She made the arguments, correct? She made the arguments regarding that this policy provision should not be enforced, yes. And, again, the point of that was simply that the trial court never had the opportunity to look at the American Freedom case or that line of cases and was simply relying on our both sides' points on contract interpretation in general. For the reasons I have set forth, unless the panel has any other questions, I would respectfully request that this panel affirm Affirmative Insurance's summary judgment entry in the trial court level. Thank you for your time. Thank you. Ms. McCabe, do you have anything you'd like to respond to? No, I'm good. All right. Thank you. All right. Again, thank you, counsel, for your arguments this morning. We appreciate the fact that I know you were both here earlier and you were right on time. We will make a decision in due course and render this decision accordingly, and we will now stand adjourned for today. Thank you.